# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **JAMES CLIFFORD GEIGER,** *Plaintiff,* v. **GEORGIA DEPARTMENT OF CORRECTIONS,** *et al.,* *Defendants.* | **CIVIL ACTION NO.** **5:19-cv-00198-TES** |

## ORDER GRANTING MOTIONS TO DISMISS

Nine plaintiffs filed virtually identical complaints following an incident involving the June 13, 2017, murder of two Georgia Department of Corrections officers, Sgt. Christopher Monica and Sgt. Curtis Billue. [Doc. 16 at ¶¶ 3, 6, 47]. Plaintiff James Clifford Geiger filed the second of those nine cases, and it is now before the Court on Defendants' Motions to Dismiss [Docs. 23, 24]. The Georgia Department of Corrections ("GDC")[1] filed the first dismissal motion, and the individual GDC employees Plaintiff named in his Amended Complaint, [Doc. 16], filed the second. As explained below, the Court **GRANTS** both Motions.

---

[1] Baldwin State Prison, Hancock State Prison, and the Georgia Diagnostic and Classification Prison are not separate legal entities but are units of the Georgia Department of Corrections, and the Court consistent with the parties' language, refers to these Defendants collectively as "GDC." [Doc. 23-1 at p. 1]; *see, e.g.,* [Doc. 25 at p. 6 ("The GDC has filed a Motion to Dismiss . . . .")].

## FACTUAL BACKGROUND

The facts of this case are simple. Plaintiff was one of many GDC inmates allegedly injured on a prison transport bus when Sgt. Monica and Sgt. Billue were overpowered and shot with their own weapons by inmates Donnie Rowe and Ricky Dubose. [Doc. 16 at ¶¶ 2, 6–7]. Rowe and Dubose subsequently fled the scene and escaped before being apprehended in Tennessee. [*Id.* at ¶¶ 7, 34, 47, 49]. Plaintiff states that he sustained physical injuries to his upper extremities during his removal from the prison bus through its rear emergency window. [*Id.* at ¶ 6]. As a result of witnessing the shootings and his subsequent 31-day placement in administrative segregation while the shootings were being investigated, Plaintiff alleges that he "suffered Post Traumatic Stress Syndrome and other psychiatric maladies yet to be identified." [*Id.* at ¶¶ 4, 6–7].

Generally speaking, Plaintiff casts his factual allegations as violations of the Eighth Amendment of the United States Constitution, Georgia law, and GDC rules and regulations. [Doc. 16 at ¶ 45]. However, after a broad reading of Plaintiff's Amended Complaint, Defendants refined Plaintiff's claims as state-law tort claims and claims under 42 U.S.C. § 1983, and Plaintiff never contends otherwise. [Doc. 23-1 at p. 2]; [Doc. 24-1 at p. 2]. Based on his purported injuries, Plaintiff seeks at least $250,000 in damages for negligence, deliberate indifference, and Defendants' alleged failure to follow GDC rules and regulations. [Doc. 16 at ¶ 45]; *see also* [*id.* at p. 30].

**DISCUSSION**

A.   **Standard of Review**

Defendants seek dismissal of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). With regard to Federal Rule of Civil Procedure 12(b)(1) jurisdictional motions, attacks on subject-matter jurisdiction come in two forms, "facial" and "factual" attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks challenge subject-matter jurisdiction based on the allegations in a complaint. *Id.* at 1529. District courts take those allegations as true in deciding whether to grant motions based on a lack of subject-matter jurisdiction. *Id.* Factual attacks challenge subject-matter jurisdiction in fact, irrespective of the pleadings. *Id.* In resolving a factual attack, courts may consider extrinsic evidence such as testimony and affidavits. *Id.* Defendants' Motions under Rule 12(b)(1) are based upon a lack of subject-matter jurisdiction, and Defendants argue that they are entitled to immunity under the Eleventh Amendment and Georgia law.

When deciding a 12(b)(6)-based motion, district courts must accept the facts set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Although Federal Rule of Civil Procedure 8 does not require detailed factual

allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted).

Ultimately, the issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). A complaint tendering "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss; it must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original); *see also Twombly*, 550 U.S. at 556. Finally, "if [a] complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6). *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009). In applying the foregoing standard, and taking the facts asserted in Plaintiff's Amended Complaint as true, the Court rules on Defendants' Motions to Dismiss.

B. **GDC's Motion to Dismiss**

As previously stated, Defendant GDC sets forth two main bases for dismissal: (1) that it is immune from suit in this Court under both the United States and Georgia Constitutions, and (2) that Plaintiff's state-law claims are further barred by the Georgia Tort Claims Act ("GTCA"). [Doc. 23-1 at pp. 4–13]. Given that GDC is undeniably

immune from suit on Plaintiff's claims the Court need not discuss GDC's procedural-related arguments under the GTCA.

Rather than address GDC's specific arguments related to its immunity, Plaintiff argued that he should be permitted to take 90–150 days for discovery, the results of which, he asserts, would enable him "to substantiate his claims," to determine "the real party of interest," and "to properly present his position [in] response to [Defendants'] Motion to Dismiss." [Doc. 25 at pp. 3–5]. Plaintiff's argument that GDC "has offered no evidence as to the real party of interest," appears to reference the Eleventh Amendment's bar to suits where the state is "the real party in interest or when any monetary recovery would be paid from state funds." [Doc. 27 at p. 2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985))]; [Doc. 25 at p. 5]. Interpreted broadly, Plaintiff's argument is perhaps an assertion that discovery would determine whether the State of Georgia is the real party in interest regarding suits against GDC.

However, as GDC states, that question is "well-settled in this circuit." [Doc. 27 at p. 2]. In *Stevens v. Gay*, the Eleventh Circuit Court of Appeals unequivocally determined that Section 1983 claims cannot proceed against GDC. 864 F.2d 113, 115 (11th Cir. 1989) (finding in a Section 1983 lawsuit that "[t]he Eleventh Amendment bars this action against the Georgia Department of Corrections"). Accordingly, Plaintiff's Section 1983 claims against GDC are barred.

Plaintiff's state-law claims against GDC are also barred by state sovereign immunity. The State of Georgia has waived sovereign immunity for certain claims against it but not for assault and battery. O.C.G.A § 50-21-24(7) ("The state shall have no liability for losses resulting from assault [or] battery . . . ."). Thus, to the extent Plaintiff asserts assault and battery claims, they are barred by state sovereign immunity. Furthermore, even if Plaintiff attempted to assert a negligence claim arising from injuries he received as a result of some assault or battery, state sovereign immunity also bars such a claim. The Georgia courts have explained that where "a plaintiff's injury was caused by an assault and battery committed by a third party, the state is immune from suit even if the assault and battery was facilitated by or resulted from the prior negligent performance of a state officer or employee." *Pelham v. Bd. of Regents of Univ. Sys. of Ga.*, 743 S.E.2d 469, 473 (Ga. Ct. App. 2013) (citing *Youngblood v. Gwinnett Rockdale Newton Comm. Serv. Bd.*, 545 S.E.2d 875, 878 (Ga. 2001)). Therefore, Plaintiff's claims against GDC cannot proceed and GDC's Motion to Dismiss [Doc. 23] is **GRANTED**.

C.   **Individual Defendants' Motion to Dismiss**

In their Motion, Defendants Gregory C. Dozier, Ricky Myrick, Clay Nix, Timothy C. Ward, Jack Randall Sauls, Trevonza Bobbitt, Eric Sellers, Annettia Toby, and Jay Sanders (collectively, the "Individual Defendants") argue that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995, 42 U.S.C. §

1997e(a) ("PLRA").[2] In response, Plaintiff does not argue that he did in fact exhaust his administrative remedies. Instead, he simply argues that his failure to exhaust should be excused by his post-traumatic stress. [Doc. 26 at p. 10 ("At the time of being placed in solitary [confinement], Plaintiff Geiger was unaware of his surroundings[ ] and was not in his right mind to file any grievances or to request[ ] regulations on how to file same due to PTSD.")].

Irrespective of whether Plaintiff's claims against the Individual Defendants are barred by various immunities, the PLRA clearly mandates that an inmate must exhaust "such administrative remedies as are available" before bringing suit. *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016). According to the Supreme Court, the mandatory language embedded within the PLRA "means [that] a court may not excuse a failure to exhaust, even to take special circumstances into account." *Id.* at 1856. Only when administrative remedies are unavailable or "not capable of use to obtain relief," can an inmate's failure to exhaust be excused. *Id.* at 1853. "First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some

---

[2] The Individual Defendants also argue that the claims against them are subject to dismissal based on: state sovereign immunity; failure to state an Eighth Amendment claim under Section 1983; and qualified immunity. However, because the Court finds that Plaintiff in fact failed to exhaust his administrative remedies under the PLRA it does not address these arguments.

mechanism exists to provide relief, but no ordinary prisoner can navigate it." *Id.* at 1853–54. And third, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Id.* at 1854.

Here, Plaintiff's excuse that "he was not in his right mind" does not fall within any of these three exceptions to exhaustion under the PLRA. [Doc. 26 at p. 10]. Given that Plaintiff has failed to demonstrate that the grievance process was unavailable to him, he failed to exhaust his administrative remedies, and such failure cannot be excused. Consequently, the Court must dismiss his claims against the Individual Defendants, and their Motion to Dismiss [Doc. 24] is **GRANTED**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss [Docs. 23, 24]. This case is **DISMISSED without prejudice**.

**SO ORDERED**, this 10th day of October 2019.

S/ Tilman E. Self, III<br>
**TILMAN E. SELF, III, JUDGE**<br>
**UNITED STATES DISTRICT COURT**